## John Whiting *versus* Hugo Dewey, Administrator of Hugo Dewey.

The guardians of a minor, in a deed of conveyance, covenanted, in their capacity of guardians, that the father of the minor died seised of the premises, and that they, in their capacity aforesaid, in right of the minor, were lawfully seised of the premises. It was *held,* that the guardians were liable personally on these covenants.

The grantor in a deed conveyed " the following *described* tract of land situate in Great Barrington, being all and the same land which B. D., deceased, lately owned in a hundred acre pitch of equalizing land, formerly laid out to C. B.'s right, supposed and considered to be bounded (describing the land particularly by metes and bounds) and containing in said described premises 22¼ acres of land." It was *held,* that this was a grant of the land described by metes and bounds, and not merely of B. D.'s title.

Where a tenant in common of land enters thereon and cuts timber, he is presumed to enter under his legal title, there being no evidence of any ouster of the co-tenants.

Although in general, upon a breach of the covenant of seisin, the measure of damages is the purchase money with interest, yet if the covenantee has derived profits from the land for which, from lapse of time, he is no longer responsible, *it seems* that such profits should be deducted from the purchase money and interest.

This was an action of covenant broken, brought on the covenants in a deed dated January 22, 1806, by which Hugo Dewey and Hugo Burghardt, as testamentary guardians of Abigail Dewey, an infant daughter of Benedict Dewey, deceased, conveyed to the plaintiff, " the following described tract of land, situate and being in Great Barrington, on the pine plain, not far from Jabez Turner's dwellinghouse, being all and the same land which the said Benedict Dewey, deceased, lately owned in a hundred acre pitch of equalizing land formerly laid out to Conrad Burghardt's right, supposed and considered to be bounded east on the Housatonic River or land owned by Conrad Van Deusen or both, south on land owned by the heirs of deacon Daniel Nash, north on land

owned by said Jabez Turner, and west on the west end of said hundred acre pitch ; containing in said described premises, at least twenty-two acres and one fourth of land." The grantors covenanted in their capacity of guardians, " that Benedict Dewey, deceased, died seised of the premises ; secondly, that they, in their capacity aforesaid, in right of the said minor, were lawfully seised of the premises." The deed was in the handwriting of the plaintiff, and the consideration was the sum of $258·10.

Hugo Burghardt died before this action was commenced, and Hugo Dewey, the other grantor, who was the original defendant, died since its commencement.

The defendant pleaded : 1. *Non est factum ;* 2. That Benedict Dewey died seised, and that the grantors, in their capacity of guardians, were seised &c. (in the words of the covenants) ; 3. That the guardians, on January 22, 1807, paid to the plaintiff the sum of $274·60, in full satisfaction and discharge of the covenants and all damages, which was then and there accepted by him. Issues were joined on all these pleas.

At the trial, before *Wilde* J., it appeared, that soon after the plaintiff bought the land he began to cut the wood and timber, and that he continued in possession until February 1, 1828, when he conveyed the premises to Benajah W. Turner, with covenants of seisin and warranty.

No claim was set up to the land by any stranger, nor was there any interference with the possession of it, until June, 1829.

The plaintiff gave in evidence a copy of a deed from Conrad Burghardt to Peter and Jacob Burghardt, dated April 5, 1746, granting to them all his lands, with all his right, title, and interest in the same, lying in that part of Sheffield which was formerly called Upper Housatonic, " being three full rights of land, according to the grant of the General Court, made to each proprietor ; " also the records and plan of the proprietors, showing that a lot of 100 acres was laid out to Conrad Burghardt, in May, 1774.

Benajah W. Turner testified, that the land conveyed by the deed to the plaintiff, was a part of the 100 acres of land

laid out to Conrad Burghardt in 1774, as above stated ; and that when the plaintiff bought it, it was wild and not fenced, and continued so until the witness bought it.

Moses Hopkins, aged 82 years, testified, that Conrad Burghardt, who was the father of Peter and Jacob, died before the birth of the witness ; that Peter died leaving one son, Lambert, and that he also had three daughters, one of whom died before him ; that Lambert died leaving three sons, Lambert, Peter, and Isaac ; that Isaac had an action pending in court, (in which he demanded a part of the twenty-two acres and one fourth mentioned in the deed to the plaintiff,) against Benajah W. Turner ; and that the daughter of Peter Burghardt, the elder, who died before him, was married to David Crossman, and left one daughter, Mary, who was married to Nehemiah Clauson.

The defendant contended, that the deed declared on, being drawn by the plaintiff, was to be construed strictly against him ; and that, upon a fair construction, it purported to convey only the interest of Benedict Dewey, and, therefore, that the covenants could attach to nothing more than the right and title which he possessed at the time of his death, whatever that might be ; that the covenant that Benedict Dewey was seised at the time of his death was not broken if he was in fact seised, whether rightfully or not ; and that the other covenant was unmeaning, as the guardians could not be seised in right of their ward.

To prove that Benedict Dewey was seised at the time of his death, and that the guardians were seised, when the deed was made, according to the legal import of the second covenant, if it had any legal import, the defendant offered the will of Benedict Dewey, dated January 22, 1796, and proved on March 1, 1796, by which he gave to Abigail Dewey one fourth part of his real estate, and appointed Hugo Dewey and Hugo Burghardt executors of his will, and guardians of Abigail ; also, the inventory of his estate, accepted in the court of probate, by which it appeared that the twenty-two and a quarter acres of pine plain land in question were appraised and inventoried as a part of his estate ; also, the distribution of the estate made by order of the court of probate, accepted

on November 7, 1797, by which it appears that these twenty-two and a quarter acres were assigned to Abigail, as her share of her father's estate. Hopkins, who was one of the appraisers and distributors of the estate, was called by the defendant, and testified that he went on the pine plain land with one of the executors, to appraise and distribute the same.

Zebulon T. Bradley testified, on the part of the defendant, that Benedict Dewey claimed to own a piece of land on the pine plain. His testimony also tended to show, that Benedict Dewey and the guardians had cut timber from the land in question.

The defendant also gave in evidence the copy of a deed from Nehemiah Clauson and Mary, his wife, to Benedict Dewey, dated March 20, 1794, conveying to him all the lands and shares of land which descended to her, as her right or share, as an heir of her grandfather, Peter Burghardt, not before sold, to wit, " all those lands or shares of land, whether divided or undivided, located or not located, lying and being in Great Barrington," &c. This deed was offered as presumptive evidence, that Benedict Dewey claimed his title under it. But the court ruled, that, as it was proved that Mary was one of the heirs of Peter Burghardt, the jury could not according to law find, that Benedict Dewey was, in point of fact, sole seised of the premises.

The defendant also contended, that the covenants in the deed declared on, ought not to be so construed as to bind the guardians personally. But the court ruled otherwise, and the defendant excepted.

As to the plea of accord and satisfaction, the defendant offered no evidence, but relied wholly on the presumption arising from the lapse of time since the execution of the deed. If this presumption was, in the opinion of the Court, satisfactorily rebutted by the facts in the case, then judgment upon that plea was to be entered against the defendant ; otherwise the point was to be submitted to a jury.

Conrad Burghardt had ten children ; all of whom, except Jacob and one of the others, left descendants. Peter died before Jacob

Whiting
v.
Dewey.

The case was taken from the jury by consent, and reserved for the consideration of the Court. If the jury might, by law, have found that Benedict Dewey was seised according to the covenant, a new trial was to be granted. The Court were to order a nonsuit or default, or grant a new trial, or give judgment in chief, according to the law. If the Court should give final judgment for the plaintiff, the damages were to be assessed in such manner as they should judge proper

*Sept. 9th.*  C. A. *Dewey* and *Porter*, for the plaintiff, cited to the point that the guardians were bound personally by the covenants in ✝heir deed, *Sumner* v. *Williams*, 8 Mass. R. 162 ; *Caswell* v. *Wendell*, 4 Mass. R. 108 ; *Bickford* v. *Page*, 2 Mass. R. 455 ; *Blunt* v. *Melcher*, 2 Mass. R. 228 ; *Forster* v. *Fuller*, 6 Mass. R. 58 ; *Thatcher* v. *Dinsmore*, 5 Mass. R. 299 ; *Belden* v. *Seymour*, 8 Connect. R. 19 ; that the covenant, that the guardians were seised in right of the ward, was not an unmeaning covenant, *Sumner* v. *Williams*, 8 Mass. R. 217 ; that Benedict Dewey was not seised at all, or at most only as a tenant in common, *Burghardt* v. *Turner*, 12 Pick. 534 ; Stearns on Real Actions, 33 ; *Thompson* v. *Knight*, 7 Greenl. 439 ; Co. Lit. 4 *b* ; *Jackson* v. *Sellick*, 8 Johns. R. 269 ; *Mitchell* v. *Warner*, 5 Connect. R. 524 ; *Smith* v *Burtis*, 6 Johns. R. 197 ; *Jackson* v. *Howe*, 14 Johns. R. 405 ; *Kennebeck Purchase* v. *Springer*, 4 Mass. R. 416 ; *Green* v. *Liter*, 8 Cranch, 229 ; *Boston Mill Corporation* v. *Bulfinch*, 6 Mass. R. 229 ; *Small* v. *Procter*, 15 Mass. R. 495 ; *Shumway* v. *Holbrook*, 1 Pick. 114 ; *Barnard* v. *Pope*, 14 Mass. R. 434 ; *Higbee* v. *Rice*, 5 Mass. R. 351 ; *Liscomb* v. *Root*, 8 Pick. 376 ; and as to the point of accord and satisfaction, *Jenkins* v. *Hopkins*, 8 Pick. 346, and 9 Pick. 543.

*Dwight* and *Jones*, for the defendant. The meaning of these covenants was merely, that the ward was seised, and that the grantors, as guardians, had performed all the duties required by law to enable them to give the deed. The deed conveys the right and title of Benedict Dewey and no more, and the covenants attach only to what is granted. This appears clearly from the words of description. *Pernam* v *Wead*, 6 Mass. R. 131 ; *Mann* v. *Pearson*, 2 Johns. R. 37 :

*Davis* v. *Rainsford*, 17 Mass. R. 207 ; *Powell* v. *Clark*, 5 Mass. R. 355 ; *Worthington* v. *Hylyer*, 4 Mass. R. 205 ; *Bott* v. *Burnell*, 11 Mass. R. 163 ; *Sprague* v. *Snow*, 4 Pick. 54 ; *Bridge* v. *Wellington*, 1 Mass. R. 219 ; *Wallis* v. *Wallis*, 6 Mass. R. 136 ; *Ellis* v. *Welch*, 6 Mass. R. 250 ; *Browning* v. *Wright*, 2 Bos. & Pul. 26. It is sufficient for the defendant to furnish *primâ facie* evidence of the seisin of Benedict Dewey, unless the plaintiff shows a seisin in some one else. And it is not material whether the seisin was under a defeasible or indefeasible title. *Marston* v. *Hobbs*, 2 Mass. R. 439 ; *Bearce* v. *Jackson*, 4 Mass. R. 410 ; *Twambly* v. *Henley*, 4 Mass. R. 442 ; 4 Dane's Abr. 339.

WILDE J. delivered the opinion of the Court. The original defendant, Hugo Dewey, with one Hugo Burghardt, as guardians of one Abigail Dewey, a minor, in 1806 conveyed to the plaintiff the tract of land described in the writ, in their capacity as guardians, and in the same capacity, as expressed in the deed, they covenanted with the plaintiff, " that Benedict Dewey, deceased, died seised of the premises, and that they the said guardians, in right of the said minor, were lawfully seised of the premises." The original defendant, as the surviving covenantor, is charged in his private capacity with the breach of these covenants ; and the first question is, whether by law he can be charged personally on these covenants. This question was very fully considered in the case of *Sumner* v. *Williams*, 8 Mass. R. 162, which, in principle, cannot be distinguished from the case at bar ; and although the Court was divided in opinion in that case, the soundness of the decision by a majority of the Court, has never since been questioned ; and it is supported by a current of authorities, and by well established principles. When parties contract *en auter droit*, and fail to bind their principals, they are to be held personally responsible. This is the general rule, and is perfectly reasonable and just. The exception is, where the contracting party is a public agent, and contracts on the public account. This exception is founded on public policy, and therefore emphatically proves the rule ; for if the rule had not been well established, the exception would have been placed on other grounds than that of public policy.

Whiting
*v.*
Dewey

*Sept. 12th*

The next question depends on the construction of the grant, as to which we think there can be no doubt. The defendant's counsel have argued, that nothing was granted but Benedict Dewey's right and title ; and the words of description are relied on to maintain their argument. The words are, " being all the same land which the said Benedict Dewey, deceased, lately owned in a hundred acre pitch of equalizing land." If these words were the only words of description of the estate granted, the defendant's construction would be well enough ; but the language of the deed, before and after the above-cited clause, is entirely inconsistent with any such construction. The grant is, " of the following *described* tract of land ;" then follow the above-cited words, and then follows a particular description of the land granted, by metes and bounds ; and this particular description is decisive as to the land intended to be granted, and to which the covenants are to be referred. Very little stress is to be placed on words of recital and general description, as to the extent of a convey ance, when there is a particular description of the lands conveyed, in clear and unambiguous language. Now it is clear in this case, that the land particularly described was conveyed ; it is so, in express words ; and the covenant is, that Benedict Dewey died seised of the premises. Of what premises ? Why clearly of the land granted and described by metes and bounds.

Then, was Benedict Dewey seised of the land granted ? The evidence shows no such seisin except as tenant in common of the right and share conveyed to him by Mary Clauson. When he entered on the lot and cut wood and timber, he must be presumed to have entered under the title thus ac quired ; *Shumway* v. *Holbrook*, 1 Pick. 114 ; and there was no evidence of an ouster of the other tenants in common. The defendant's covenant of seisin was therefore broken as to all the land excepting the share of Mary Clauson.

With regard to the plea of accord and satisfaction, that is unsupported by any evidence, and no presumption arises from lapse of time, as the defect of title has been but recently discovered.

As to the rule of damages, we have some doubts, and if

the parties wish it, we are willing to hear another argument. The general rule is, that the purchase money, with interest from the time of the purchase, is to be the measure of damages on the breach of the covenant of seisin. But this case seems to form an exception to the general rule. The plaintiff has derived profits from the land conveyed, for which, by lapse of time, he is no longer responsible ; and thus far he has suffered no damage from the defect of title. In New York the rule is, in such a case, not to compute interest for more than six years back ; but no such limitation has ever been sanctioned in this commonwealth.

The equitable rule in this case would seem to be, to allow the plaintiff to recover the purchase money so far as there was no seisin and title, with interest, deducting the profits received by him or to his use, and for which he is not responsible to the other tenants in common.

*Note.* — The parties agreed that judgment should be entered agreeably to the rule suggested.